## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**PATRICK LEAVITT**

        Plaintiff,

**v.**

        **Case No.:**

        **Hon.**

        **Mag.**

**MICHIGAN DEPARTMENT OF CORRECTIONS,**

        Defendant.

_____/

**Timothy P. Seeger (P83315)**
**GREWAL LAW PLLC**
*Attorneys for Plaintiff*
801 Broadway Avenue NW, Suite 302
Grand Rapids, Michigan 49504
(616) 259-8463
tseeger@4grewal.com
_____/

### COMPLAINT AND JURY DEMAND

    **NOW COMES** Plaintiff, Patrick Leavitt, by and through his attorneys, GREWAL LAW PLLC, and for his Complaint against Defendant Michigan Department of Corrections and Jury Demand, alleges and states as follows:

### PARTIES, JURISDICTION, AND VENUE

    1.    This is a civil action for the retaliation against Mr. Leavitt for exercising his First Amendment rights and for monetary relief for injuries sustained by Plaintiff as a result of acts, conduct, and omissions of Defendant and its respective employees, representatives, and agents, relating to the violation of Plaintiff's constitutional rights.

2.    At all relevant times, Plaintiff (hereinafter "Mr. Leavitt") was a resident of Gratiot County, Michigan.

3.    Defendant, Michigan Department of Corrections (hereinafter "MDOC") is a governmental entity whose registered mailing address is Grandview Plaza, 206 E. Michigan Avenue, P.O. Box 30003, Lansing, MI 48909 and who is duly authorized to operate correctional facilities throughout the State of Michigan, including Montcalm County.

4.    Defendant's principal place of business is located in Ingham County, Michigan.

5.    Venue is proper in the District Court for the Western District of Michigan pursuant to 28 U.S.C. § 1391 (b) & (c) because MDOC resides in, and the majority of the events alleged took place in, the Western District of Michigan.

6.    Jurisdiction is proper in the District Court for the Western District of Michigan pursuant to 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions.

## PLAINTIFF'S EMPLOYMENT WITH DEFENDANT

7.    Plaintiff incorporates the preceding paragraphs by reference as if fully set forth herein.

8.    Mr. Leavitt began working for Defendant at the Carson City Correctional Facility in or around 2006.

9.    Mr. Leavitt performed his job duties and responsibilities in a manner that, at a minimum, demonstrated that he was qualified for his position and exceeded his employer's expectations.

10.    During his employment, Mr. Leavitt has served as the Vice President of the local union chapter for Carson City Correctional Facility.

11.     Mr. Leavitt had never received a write-up, or other disciplinary action, related to his conduct as a corrections officer prior to August of 2022.

12.     During his employment Mr. Leavitt has received a letter of accommodation from the Carson City warden and was presented with a leadership coin.

### MR. LEAVITT'S COMPLAINT

13.     In 2021, an inmate was being escorted by Mr. Leavitt, and two other officers.

14.     During this process, it was discovered that the inmate possessed some form of narcotics.

15.     The narcotics were in a pink and blue package.

16.     The narcotics were seized.

17.     Mr. Leavitt and Sergeant Fidler then took the drugs to the proper department.

18.     The drugs were given to Lieutenant Stacy Burns (hereinafter "Lieutenant Burns").

19.     Lieutenant Burns proceeded to discard the drugs in a nearby trash can rather than preserving the evidence.

20.     Lieutenant Burns is Mr. Leavitt's superior.

21.     Lieutenant Burns stated, "They are not going to do anything with it [the drugs]" as she threw away the drugs.

22.     A critical incident report was then created.

23.     Based upon the critical incident report, officials in Lansing requested the drugs be taken into evidence.

24.     Lieutenant Burns submitted some form of substance to the Lansing officials.

25.     The substance, and its wrapper, were different from what was retrieved from the inmate.

26.     Lieutenant Burns represented this substance as the same that was collected from the inmate that was actually disposed of by Lieutenant Burns.

27.     Mr. Leavitt lodged a complaint about this incident to Assistant Deputy Warden, Kris Nevins.

28.     An internal investigation was conducted regarding the inmate and the possession of drugs.

29.     The investigation was ultimately closed.

30.     Mr. Leavitt was not interviewed in relation to the incidents described above.

31.     Based upon information and belief, none of the escorting officers involved in the incidents described herein were interviewed during the investigation.

32.     Mr. Leavitt took it upon himself to speak with the investigator to question why Mr. Leavitt was not interviewed.

33.     The investigator stated that Mr. Leavitt was not interviewed as Mr. Leavitt was not listed on the critical incident report.

34.     The investigator alleged Mr. Leavitt was not listed on the critical incident report despite being one of the escorting officers.

35.     Mr. Leavitt later learned that he was in fact listed on the critical incident report.

36.     Mr. Leavitt was concerned that the inmate might be charged with drugs he did not possess.

37.     Mr. Leavitt was also concerned that he himself might be subject to some form of investigation, or punishment, if he did not report the information he possessed.

38.    Beginning shortly after the incident with Lieutenant Burns, Mr. Leavitt began conversing with others outside of his workplace, namely Scott Kurtz and Sarah Gable, about Lieutenant Burns' unlawful conduct.

39.    These conversations took place outside of work hours and days and took place using private telephones.

40.    In or around May of 2022, Mr. Leavitt e-mailed Deputy Director Jeremy Bush the information described herein.

41.    Specifically, Mr. Leavitt informed Deputy Director Bush that the original drugs were disposed of by Lieutenant Burns and expressed his concern that fake, or different, drugs were being used to prosecute an inmate.

42.    Mr. Leavitt believed this to be illegal and in violation of Michigan and Federal laws.

43.    Based upon information and belief, an investigation into Lieutenant Burns was commenced in or around June of 2022.

**DEFENDANT'S RELATIATION**

44.    On or around August 17, 2022, there was an incident with an inmate.

45.    The inmate possessed a contraband.

46.    Mr. Leavitt, and two other officers, responded to the incident.

47.    The three officers were able to restrain the inmate.

48.    Based upon information and belief, this inmate has a history of violent crimes, including assault/battery on corrections officers.

49.    Mr. Leavitt reported the incident to his direct supervisor.

50.    Mr. Leavitt also wrote a report concerning the incident.

51.     As a result, of this incident, the inmate was removed from Unit Four housing and placed in segregation.

52.     The inmate involved was also charged with assault and battery due to his conduct in this incident.

53.     On August 22, 2022, Mr. Leavitt learned an investigation was opened alleging that Mr. Leavitt used "excessive force" relating to the incident described in paragraphs 39 through 48 of this Complaint.

54.     Mr. Leavitt was placed on a stop-work order pending investigation.

55.     Based upon information and belief, Mr. Leavitt was the only officer involved in this incident that was investigated.

56.     Based upon information and belief, Mr. Leavitt was the only officer involved in this incident that was placed on a stop-work order.

57.     Based on information and belief, the other two officers involved have faced no threatened, or actual, disciplinary action.

58.     Based upon information and belief, Mr. Leavitt was the only officer involved in this incident that was accused of "excessive force."

59.     The investigation was initiated by Lieutenant Burns.

60.     Lieutenant Burns is the officer Mr. Leavitt complained of and spoke about as described herein.

61.     The investigation alleges that Mr. Leavitt failed to adhere to reporting requirements and, as a result, committed "Dereliction of Duty."

62.     Mr. Leavitt continues to dispute the investigation and any alleged violations as he complied with all rules and regulations in relation to the apprehension and detention of the inmate in question.

63.     All charges were eventually dropped and Mr. Leavitt was permitted to return to work.

64.     Additionally, for the past 15 years, Mr. Leavitt has been a member of the Emergency Response Team ("ERT"), with the Michigan Department of Corrections.

65.     Mr. Leavitt rose to the level of Assistant District Commander with the ERT.

66.     The only time in which Mr. Leavitt did not participate in ERT activities is when he we not qualified to carry a handgun as required by ERT.

67.     To note, Mr. Leavitt was not qualified to carry a handgun for a period of time by his own choosing and his own election not to renew.

68.     Regardless, during that period, Mr. Leavitt continued to attend the mandatory trainings required to be a member of the ERT.

69.     In or around March of 2023, after Mr. Leavitt returned from the above-mentioned suspension, he spoke to Jeremy Labelle about returning to active duty with the ERT.

70.     This request was denied.

71.     Mr. Labelle stated the reason that Mr. Leavitt's request was denied was because Mr. Leavitt, "was not willing to help out the facility during COVID" when he did not recertify to carry a handgun, as described herein.

72.     Mr. Labelle made this statement despite the fact that Mr. Leavitt assisted the ERT multiple times during COVID, and after, including cell extractions.

73.     Mr. Labelle made reference that the decision was made by, or effected by, Sherman Campbell.

74.     Mr. Campbell is a known friend of Warden Rewerts, Warden for Carson City.

75.     Mr. Leavitt is qualified to return to ERT.

## COUNT I: VIOLATION OF 42 USC § 1983

76.     Plaintiff incorporates by reference paragraphs 1 through 63 of the Complaint as though fully set forth herein.

77.     "[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out[.]"[1]

78.     During his employment with Defendant, Mr. Leavitt exercised his First Amendment right to Freedom of Speech considered to be critical of MDOC, including, but not limited to, that Mr. Leavitt's direct supervisor destroyed and falsified evidence in relation to a criminal charge.

79.     Mr. Leavitt exercised his First Amendment right to Freedom of Speech as a private citizen as he had many conversations outside of work using his personal phone.

80.     Mr. Leavitt was exercising his First Amendment right to Freedom of Speech when he engaged in a protected act by advising friends, family, coworkers, Assistant Deputy Warden Kris Nevins, Scott Kurtz, Sarah Gable, and Deputy Director Jeremy Bush on a matter of public concern.

81.     Mr. Leavitt's statements were and are a matter of public concern.

---

[1]     *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (*citing Crawford-El v. Britton*, 523 U.S. 574, 592 (1998)).

82.　　Lieutenant Burns was acting within the scope of her employment when she disposed of the narcotics and subsequently represented different substance as the same that was collected from the inmate that was actually disposed of.

83.　　The suspension of Mr. Leavitt's employment was an adverse employment action.

84.　　Defendant's refusal to permit Mr. Leavitt to return to ERT is a tangible employment action and negatively impacts his future job opportunities and career advancement.

85.　　Charging Defendant with excessive force, and the other erroneous claims against him, have and will effect Mr. Leavitt's future employment opportunities.

86.　　Pursuant to 42 U.S.C. § 1983, MDOC violated Mr. Leavitt's First Amendment right to free speech by suspending him, due to the exercise of his First Amendment rights on matters of public concern.

87.　　As a direct and proximate result of MDOC's violation of Mr. Leavitt's well-established rights under the United States Constitution, made applicable to MDOC through 42 U.S.C. § 1983, Mr. Leavitt sustained damages including, but not limited to, depression, emotional and physical distress, mental and physical anguish, humiliation, loss of reputation and embarrassment, an the physical manifestations of these problems and will suffer these problems in the future.

88.　　The nature of MDOC's conduct entitles Mr. Leavitt to exemplary and/or punitive damages.

89.　　**WHEREFORE**, Mr. Leavitt respectfully requests this Honorable Court enter a judgment in his favor against MDOC for all damages to which he is entitled to pursuant to 42 U.S.C. § 1983, including, but not limited to, actual damages, emotional distress, exemplary damages, and punitive damages. Further, Mr. Leavitt makes claim for any amount that he may be

entitled to, plus costs and interest, that this Honorable Court may deem just and proper and the nature of this case may allow.

## **PRAYER FOR RELIEF**

Mr. Leavitt, based on the wrongful acts and counts set forth above, requests this Court and the finder of fact enter a judgment in Mr. Leavitt's favor against Defendant as indicated above in an amount consistent with the proofs of trial, and seeks against Defendant all appropriate damages arising out of law, equity, and fact for each or all of the above counts where applicable and hereby requests that the trier of fact award Mr. Leavitt all applicable damages, including without limitation:

A.   Compensatory and Non-Compensatory damages, in an amount to be determined as fair and just under the circumstances by the trier of fact, including without limitation damages for loss of reputation, damage to current earnings, damage to future earnings, emotional and mental pain and suffering, an award for the value of lost fringe and retirement benefits (past and future), and attorney fees, interest, and costs.

B.   Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

C.   Reasonable attorney fees, interest, and costs;

D.   Any other relief the Court deems fit and just.

Respectfully Submitted,

Dated:  June 6, 2023

 /s/ *Tim P. Seeger*
**Tim P. Seeger (P83315)**
Grewal Law PLLC
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

**PATRICK LEAVITT**

                Plaintiff,

**v.**

**Case No.:**

**Hon.**

**Mag.**

**MICHIGAN DEPARTMENT OF**
**CORRECTIONS,**

                Defendant.

_____/

**Timothy P. Seeger (P83315)**
**GREWAL LAW PLLC**
*Attorneys for Plaintiff*
801 Broadway Avenue NW, Suite 302
Grand Rapids, Michigan 49504
(616) 259-8463
tseeger@4grewal.com

_____/

        **NOW COMES** Plaintiff, Patrick Leavitt, by and through his attorneys, GREWAL LAW,

PLLC, and demands trial by jury in reference to the above-entitled matter.

                                     Respectfully Submitted,

                                     GREWAL LAW, PLLC

Dated: June 6, 2023                    By: _/s/ Tim P. Seeger___ _____
                                Tim P. Seeger (P83315)
                                Attorney for Plaintiff